UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MAZZEI,<br><br>            Petitioner,<br><br>       v.<br><br>RON DAVIS, Warden,<br><br>            Respondent. | No.  2:14-cv-1720 GEB KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

     Petitioner is a state prisoner, proceeding without counsel and in forma pauperis.  Petitioner filed an application for petition of writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is respondent's motion to dismiss the habeas petition as barred by the statute of limitations.  For the reasons set forth below, respondent's motion should be granted.

II. Legal Standards

     Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court. . . ."  Id.  The Court of Appeals for the Ninth Circuit has referred to a respondent's motion to dismiss as a request for the court to dismiss under Rule 4 of the Rules Governing § 2254 Cases.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (1991).  Thus, the court reviews the motion to dismiss pursuant to its authority under Rule 4.

1

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted. Section 2244(d)(1) of Title 8 of the United States Code provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2).

Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2). Generally, this means that the statute of limitations is tolled during the time after a state habeas petition has been filed, but before a decision has been rendered. Nedds v. Calderon, 678 F.3d 777, 780 (9th Cir. 2012). However, "a California habeas petitioner who unreasonably delays in filing a state habeas petition is not entitled to the benefit of statutory tolling during the gap or interval preceding the filing." Id. at 781 (citing Carey v. Saffold, 536 U.S. 214, 225-27 (2002)). Furthermore, the AEDPA "statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval." Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999),

overruled on other grounds by Carey, 536 U.S. at 214.  Thus, "[t]he period between a California lower court's denial of review and the filing of an original petition in a higher court is tolled -- because it is part of a single round of habeas relief -- so long as the filing is timely under California law."  Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010).  However, when a petitioner has filed multiple state habeas petitions, "[o]nly the time period during which a round of habeas review is pending tolls the statute of limitation; periods between different rounds of collateral attack are not tolled."[1]  Banjo, 614 F.3d at 968 (citation omitted).

Generally, a gap of 30 to 60 days between state petitions is considered a "reasonable time" during which the statute of limitations is tolled, but six months is not reasonable.  Evans v. Chavis, 546 U.S. 189, 210 (2006) (using 30 to 60 days as general measurement for reasonableness based on other states' rules governing time to appeal to the state supreme court); Carey, 536 U.S. at 219 (same); Waldrip v. Hall, 548 F.3d 729, 731 (9th Cir. 2008) (finding that six months between successive filings was not a "reasonable time").

State habeas petitions filed after the one-year statute of limitations has expired do not revive the statute of limitations and have no tolling effect.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001).

III. Chronology

For purposes of the statute of limitations analysis, the relevant chronology of this case is as follows:

---

[1] The Ninth Circuit has articulated a "two-part test to determine whether the period between the denial of one petition and the filing of a second petition should be tolled.  First, we ask whether the petitioner's subsequent petitions are limited to an elaboration of the facts relating to the claims in the first petition.  If the petitions are not related, then the subsequent petition constitutes a new round of collateral attack, and the time between them is not tolled.  If the successive petition was attempting to correct deficiencies of a prior petition, however, then the prisoner is still making "proper use of state court procedures," and habeas review is still pending.  Second, if the successive petition was not timely filed, the period between the petitions is not tolled."  Banjo, 614 F.3d at 968-69 (citations and internal quotation marks omitted).  In Hemmerle v. Schriro, 495 F.3d 1069, 1075 (9th Cir. 2007), the Ninth Circuit explained that "[i] the petition was denied on the merits, we will toll the time period between the two properly-filed petitions; if it was deemed untimely, we will not."  Id. at 1075.

3

1. On April 5, 2005, a felony complaint was filed in the Solano County Superior Court accusing petitioner of murder. (Clerk's Transcript ("CT") at 1; ECF No. 18-2 at 5-6.)

2. On January 13, 2006, petitioner pled no contest to the charge of first degree murder. (Reporter's Transcript ("RT") at 3-5; ECF No. 18-1 at 286-88.) During the plea hearing, defense counsel noted, and the prosecution confirmed, that the plea was entered with the understanding that the knife-use enhancement pursuant to California Penal Code § 12022(b)(1) would be dismissed, and the prosecution would not seek to add a special circumstance of financial gain pursuant to California Penal Code § 190.2(a)(1). (ECF No. 18-1 at 286.) On January 12, 2006, petitioner signed a written change of plea form in which he confirmed that the only promises made to induce him to plead were the dismissal of the knife-use enhancement and the promise that the special circumstance of financial gain would not be added. (ECF Nos. 1 at 90; 18-2 at 101.)

3. On February 21, 2006, petitioner was sentenced to an indeterminate state prison term of twenty-five years to life. (ECF No. 18-1 at 295.)

4. Petitioner did not file an appeal.

5. On February 14, 2007, petitioner signed a pro se petition for writ of habeas corpus, which was filed on February 22, 2007, in the Solano County Superior Court. (ECF No. 18-4 at 155-60.) The appended four page "Memorandum of Law" raised two claims for relief: (a) violations of petitioner's rights under Miranda v. Arizona, 384 U.S. 436 (1966), alleging that as a Canadian citizen, at some early phase of his arrest and interrogation, he was not allowed to contact the Canadian Consulate pursuant to the Vienna Convention; and (b) ineffective assistance of trial counsel alleging that counsel allowed petitioner to waive preliminary hearing and plead guilty to a life sentence without adequate investigation. (ECF No. 18-4 at 164-65.) On May 14, 2007, the Solano County Superior Court denied the petition. (ECF No. 18-4 at 198-99.) The superior court noted that "[n]o evidence exists that petitioner sought to withdraw his plea, to file a timely appeal or to obtain a certificate of probable cause pursuant to Penal Code section 1273.5." (ECF No. 18-4 at 199.) In denying the petition, the superior court found:

////

4

> Petitioner does not state a basis for habeas relief. Procedurally, habeas corpus cannot serve as a substitute for an appeal and will not be available when a petitioner could have, but did not, raise his claim on direct appeal. (*In re Dixon* (1953) 41 Cal.2d 756, 759.) Petitioner's claim that he was denied rights under the Vienna Convention is a matter to have been addressed on direct appeal. (*People v. Villa* (2007) 148 Cal.App.4th 473, 479.) Similarly, petitioner was also required to raise his claim of ineffective assistance of counsel by direct appeal. (*In re Chaves* (2003) 30 Cal.4th 643, 650; *People v. Natividad* (1963) 222 Cal.App.2d 438, 441.) [fn 1]
>
> [fn 1: Petitioner's claim of alleged *Miranda* violations appears irrelevant. Petitioner waived his right to a preliminary hearing and trial, and there is no claim that any evidence was introduced in violation of *Miranda* nor that any hearing was conducted at which statements obtained allegedly in violation were ordered admissible.]

(ECF No. 18-4 at 199.)

      6. On October 4, 2012,[2] the Solano County Superior Court received his pro se motion styled, "Post-sentence Motion to Set-Aside Judgment; and Vacate and/or Withdraw No Contest Plea," in Case No. VCR 178416. (ECF No. 18-3 at 77.) Petitioner sought relief under California Penal Code §§ 1018 (allowing withdrawal of guilty plea in certain circumstances), 1016.5(a)(b)(d) (requiring trial courts to advise defendants before accepting pleas that certain convictions may have immigration consequences), and Boykin v. Alabama, 395 U.S. 238 (1969) (requiring guilty pleas to be "intelligent and voluntary.") (ECF No. 18-3 at 77.) Petitioner argued that his plea should be set aside because it was not voluntary and knowing based upon the misadvice or misstatement of law by petitioner's defense counsel. (ECF No. 18-3 at 77-84.)

      On December 4, 2012, the post-sentence motion was denied as untimely, citing California Penal Code § 1018, and petitioner was advised that if he wished to raise his claims via a writ of

---

[2] Petitioner claims he filed the motion on October 12, 2012. (ECF No. 1 at 4.) The chronological index in the CT for People v. Mazzei, Case No. VCR178416, Appeal No. A137383, notes that the post-sentence motion was filed on 10/04/12. (ECF No. 18-2 at 4.) The copy of the post-sentence motion scanned into CM-ECF does not bear a file-stamp date, but indicates that petitioner signed the motion on October 31, 2012. (ECF No. 18-3 at 77, 84.) However, the copy appended to the declaration filed by petitioner in support of his post-sentence motion clearly bears a December 4, 2012 file-stamp date by the Solano County Superior Court Clerk. (ECF No. 18-4 at 42.) Respondent infers that the document was file-stamped December 4, 2012, because the untimely motion was not filed as a properly-filed pleading, but only to complete the record. (ECF No. 30 at 2 n.1.) In an abundance of caution, the court uses October 4, 2012, the earliest date referenced.

1  habeas corpus, he must do so in compliance with Rules 4.550 - 4.552 of the California Rules of
2  Court.  (ECF No. 18-4 at 92.)
3         7.  On December 11, 2012, petitioner signed a notice of appeal from the denial of his post-
4  sentence motion, and a request for certificate of probable cause, which were filed in the Solano
5  County Superior Court, in Case No. VCR178416, on December 18, 2012.  (ECF No. 18-4 at 96-
6  97.)  The request for certificate of probable cause was denied by the superior court on December
7  17, 2012.  (ECF No. 18-4 at 99.)
8         8.  On December 18, 2012, petitioner's appeal from the denial of his post-sentence motion
9  was filed in the California Court of Appeal, First Appellate District, in Case No. A137383.  (ECF
10 No. 18-4 at 121.)  On January 15, 2014, the California Court of Appeal, First Appellate District,
11 dismissed the appeal "as abandoned because [petitioner] is not entitled to Wende review and no
12 claims of error have been raised."  (ECF No. 18-1 at 26-31, citing People v. Wende, 25 Cal.3d
13 436 (1979).).
14        9.  On January 2, 2014, petitioner, through counsel, filed a petition for writ of habeas
15 corpus in the Court of Appeal for the First Appellate District, Case No. A140633.  (ECF No. 18-1
16 at 32-55.)  The petition raised one claim alleging that petitioner was denied effective assistance of
17 counsel due to his attorney's alleged misadvisement that he would be able to apply for transfer to
18 prison in his home country of Canada, when in fact his plea precludes him from eligibility to
19 apply for 25 years.  (ECF No. 18-1 at 34.)  On January 30, 3014, respondent filed an opposition to
20 the petition for writ of habeas corpus in the California Court of Appeal for the First Appellate
21 District.  (ECF No. 18-1 at 227-37.)  On March 20, 2014, petitioner, through counsel, filed an
22 informal reply brief in the California Court of Appeal for the First Appellate District.  (ECF No.
23 18-1 at 239-48.)  On April 24, 2014, the California Court of Appeal denied the petition for writ of
24 habeas corpus, without comment or citation.  (ECF No. 18-1 at 276.)
25        10.  On May 5, 2014, petitioner, through counsel, filed a petition for review in the
26 California Supreme Court, in Case No. S218391.  (ECF No. 18-1 at 251-78.)  Petitioner raised the
27 same ineffective assistance of counsel claim filed in the appellate court, but included an
28 additional claim: "Whether justice compels issuance of an order to show cause where the petition

for writ of habeas corpus sets forth a prima facie case that but for counsel's incorrect advice that petitioner could transfer to prison in Canada, he would not have entered into the plea, and the allegations of the petition are corroborated by multiple declarations and other exhibits." (ECF No. 18-1 at 255.) On July 9, 2014, the California Supreme Court denied the petition without citation. (ECF No. 1 at 6.)

11. On July 10, 2014, petitioner signed the instant pro se federal petition. See Rule 3(d) of the Federal Rules Governing Section 2254 Cases.

12. On October 7, 2014, petitioner, through counsel, filed a petition for writ of certiorari in the United States Supreme Court. (ECF No. 26 at 19-26.) The petition included both claims contained in the petition filed in the California Supreme Court. (ECF No. 26 at 20.) The petition was denied, without comment, on December 15, 2014. (ECF No. 26 at 54.)

13. On December 10, 2014, respondent filed a motion to dismiss. On May 26, 2015, petitioner filed an opposition. On June 11, 2015, respondent filed a reply.

IV. Statutory Tolling

Petitioner did not file an appeal. Because petitioner did not file an appeal after his sentencing on February 21, 2006, his "time for seeking direct review" under § 2244(d)(1)(A) expired sixty days after that date, April 22, 2006, and the limitations period began on April 23, 2006. See Cal. R. Ct. 8.308(a) (requiring that appeals from criminal judgments be filed within sixty days of the rendition of judgment). Absent tolling, petitioner's last day to file his federal petition was on April 23, 2007.

The statute of limitations period began to run on April 23, 2006, and the clock stopped once petitioner filed his first petition for writ of habeas corpus in the Solano County Superior Court on February 14, 2007. By then, 297 days of the limitations period had expired. On May 14, 2007, the petition was denied. Thus, the limitations period was tolled for 89 days during the pendency of such petition.

On May 15, 2007, the limitations period began to run again. Because petitioner only had 68 more days remaining in the limitations period, the limitations period expired on Sunday, July 22, 2007. Thus, petitioner was required to file his federal petition by Monday, July 23, 2007.

Petitioner's next filing in state court was not until October 4, 2012, long after the limitations period expired. As set forth above, collateral challenges filed after the limitations period expired cannot revive the statute of limitations period. Ferguson, 321 F.3d at 823. Thus, absent exceptions or the application of equitable tolling, addressed below, the instant petition is barred by the statute of limitations.

V. Later Commencement of Limitations Period

  A. January 7, 2011

In his declaration, petitioner states that it was on January 7, 2011, that he "finally concluded that [his] plea to first-degree murder . . . [left him] ineligible to transfer to Canada," based on his receipt of the final denial from Correctional Services Canada ("CSC"), contained in a letter dated December 30, 2010, from Dave Connor. (ECF No. 1 at 28.) Respondent contends that even assuming the January 7, 2011 commencement date, the instant petition is untimely.

Title 28 U.S.C. § 2244(d)(1)(D) states that the limitations period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Id. The objective standard in determining when time begins to run under Section 2244(d)(1)(D) is "when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." Hasan v. Galaza, 254 F.3d 1150 (9th Cir. 2001). "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012) (citation omitted). Thus, "[a]lthough section 2244(d)(1)(D)'s due diligence requirement is an objective standard, a court also considers the petitioner's particular circumstances. Id. The requirement of due diligence generally implies an affirmative duty to investigate after some triggering event has raised or should have raised the suspicion that further investigation might prove fruitful. See, e.g., Singh v. Gonzales, 491 F.3d 1090, 1096 (9th Cir. 2007) (habeas petitioner claiming ineffective assistance of counsel in immigration proceeding did not exercise due diligence, and thus did not qualify for equitable tolling, because he failed "to definitively learn of [a] fraud after he became suspicious of the fraud.").

Liberally crediting petitioner's claim that it was not until January 7, 2011, that he finally realized he was ineligible for transfer to Canada, the instant petition remains barred by the statute of limitations. Using January 7, 2011, as the new commencement date for the one year statute of limitations period, the limitations period expired on Saturday, January 7, 2012. However, petitioner did not file his state court challenge until October 4, 2012, almost nine months after the limitations period expired. State court collateral challenges filed after the limitations period has expired cannot revive the statute of limitations period.

B. Alleged Reinstatement of Direct Appeal

Petitioner argues that his first filing in the state appellate court was a "notice of appeal which was a form of direct appeal." (ECF No. 28 at 2.) Petitioner contends that his case is similar to Frasch v. Peguese, 414 F.3d 518 (4th Cir. 2005), arguing that if this appeal was not treated in every respect as a timely direct appeal, the state appellate court would not have appointed counsel because there is no right to counsel for collateral attacks in California. Petitioner argues that even a belated appeal can be construed as a form of direct review under § 2244(d)(1)(A). He contends that in light of the January 15, 2014 order dismissing his appeal, his conviction became final on February 24, 2014 (ECF No. 28 at 6), and thus the instant petition, filed July 21, 2014, was filed well before the limitations period expired on February 24, 2015.

Respondent contends that petitioner's untimely filing of an appeal cannot revive the limitations period, and that petitioner was not granted leave to pursue a direct appeal. (ECF No. 30 at 3-4.)

"[W]here a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)," and is only final at the conclusion of direct review of "the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal." Jimenez v. Quarterman, 555 U.S. 113, 121 (2009). However, the dismissal of a direct appeal as untimely does not constitute "the conclusion of direct review" under § 2244(d)(1)(A) where the petitioner was not first granted leave to file an out-of-time direct appeal, by which the pendency of his direct appeal was restored. Randle v. Crawford, 604 F.3d

9

1047, 1054-55, 1056 (9th Cir. 2010) (rejecting the argument that the state court's dismissal of an untimely notice of appeal marked the beginning of the one-year limitations period because the state court never granted leave to file an untimely direct appeal, distinguishing this case from Quarterman, 555 U.S. at 121, where the state court granted petitioner the right to file an out-of-time appeal). As the Ninth Circuit subsequently explained:

> The Supreme Court has not allowed late filings to toll AEDPA's statute of limitations. See, e.g., Pace v. DiGuglielmo, 544 U.S. 408, 413, 125 S. Ct. 1807, 161 L.Ed.2d 669 (2005) (28 U.S.C. § 2244(d)(1)(A) not tolled by untimely state postconviction petition because "a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction motions. This would turn § 2244(d)(2) into a de facto extension mechanism . . . and open the door to abusive delay."). On a similar rationale, we have held that a state supreme court's dismissal of a notice of appeal as untimely does not constitute the "conclusion of direct review" -- and does not restart the statute of limitations -- under § 2244(d)(1)(A). Randle v. Crawford, 604 F.3d 1047, 1054-55 (9th Cir. 2010). We reasoned that "[i]f the one-year limitations period were made contingent on the resolution of a petitioner's attempt to file an untimely notice of appeal, a petitioner could indefinitely delay the commencement of the one-year period by simply waiting to file such notice until after the normal expiration date." Id.

United States v. Buckles, 647 F.3d 883, 889 (9th Cir. 2011) (where state Supreme Court Clerk labeled as untimely a criminal certiorari petition, court was unwilling to construe its denial as an indication that the court forgave the untimeliness of Buckles' petition, and thus it did not restart the one-year limitations period of § 2255(f)(1).)

Here, petitioner fails to identify a state court order granting him leave to file a late direct appeal or that could be construed as reopening direct review. Rather, petitioner's post-sentence motion was initially denied as untimely under California Penal Code § 1018, because such motion must be filed prior to entry of the criminal judgment. Id. Such ruling cannot restart the limitations period. Randle, 604 F.3d at 1054-55.

The fact that petitioner was allowed to appeal such denial to the state appellate court does not demonstrate that petitioner was granted leave to pursue a belated direct appeal, or reopened direct review. The state appellate court initially noted that petitioner waived his right to appeal his conviction in his plea agreement, and that he filed his motion to vacate the conviction almost seven years after his plea. (ECF No. 18-1 at 26-27.) Although counsel was initially appointed for

1  petitioner, counsel failed to identify any claims of error, and asked the appellate court to perform
2  an independent review of the record pursuant to Wende, 25 Cal.3d at 436.  But the court found
3  petitioner was not entitled to a Wende review pursuant to People v. Serrano, 211 Cal. App. 4th
4  496 (Cal. App. 6 Dist. 2012), because petitioner was pursuing a subsequent appeal, not "a first
5  appeal of right." (ECF No. 18-1 at 27.)  Similarly, petitioner was not entitled to an independent
6  review under Anders v. California, 386 U.S. 738, 741, 744 (1967), because Anders does not
7  require independent review in appeals other than first appeals of right from criminal convictions.
8  (ECF No. 18-1 at 28.)  Nothing in this decision suggests that the state appellate court allowed
9  petitioner to pursue a belated direct appeal or reopened direct review for purposes of 28 U.S.C.
10 § 2244(d)(1)(A).  That the state appellate court refused to perform an independent review under
11 Wende confirms that direct review was not reopened.  Rather, the state appellate court dismissed
12 the appeal as abandoned.  (ECF No. 18-1 at 26-31.)

13  Petitioner argues that had his case not been treated as a timely appeal, the appellate court
14 would not have appointed counsel on appeal because there is no right to an attorney for collateral
15 attacks in California.  But the appointment of counsel does not determine whether the state court
16 has revived a direct appeal.  Petitioner's reliance on Frasch is unavailing, because Frasch was
17 expressly granted "the right to file a belated application for leave to appeal."  Id., 414 F.3d at 523
18 (despite having received such relief by way of collateral challenge, Frasch obtained a belated
19 direct review of his conviction under Maryland law).  Petitioner herein was not granted leave to
20 file a belated appeal, and the state appellate court order did not reopen direct review.

21  Nothing in the superior court's order dismissing petitioner's motion to vacate the
22 conviction as untimely, or the appellate court's order dismissing his appeal of that decision as
23 abandoned, or any other court ruling, did anything to reopen the period for direct review so as to
24 restart the AEDPA limitations period under 28 U.S.C. § 2244(d)(1)(A).
25 ////
26 ////
27 ////
28 ////

    C.  <u>Impediments to Learning Factual Predicate</u>[3]

Petitioner argues that there were multiple impediments to his learning that defense counsel's advice was incorrect that he "would be able to apply for transfer to . . . Canada." (ECF No. 28 at 7.) Petitioner argues that he cannot be faulted for failing to submit a document for three years when he diligently submitted two applications, on April 11, 2006, and December 12, 2006, within the first ten months of his sentence. (ECF No. 18 at 11.) Also, petitioner claims he was unable to timely obtain a complete record of the criminal proceedings. Petitioner claims that because the conditions to the Treaty required that his criminal conviction be final, with no appeal or collateral attack pending, he was unable to raise the underlying claims without disrupting the processing of his request for transfer to Canada. Petitioner also complains that his prison file reflects that he is a United States citizen rather than a Canadian citizen. (ECF No. 28 at 17.)

Respondent counters that the alleged impediments that occurred prior to 2011 are of no consequence because even assuming petitioner did not learn the factual predicate until January 7, 2011, the instant filing remains untimely under the AEDPA statute of limitations. Respondent also argues that with the exercise of reasonable diligence, petitioner could have discovered the underlying facts of his claim years before the January 7, 2011 date.

Section 2244(d)(1)(D) provides that petitioner must file the federal petition within one year from the latest of:

> the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(D). Section 2244(d)(1)(D) applies to those who could not discover the factual predicate for their claims, not those who "sleep on their rights." <u>Fisher v. Johnson</u>, 174 F.3d 710, 715 (5th Cir. 1999); <u>see also</u> <u>Majoy v. Roe</u>, 296 F.3d 770, 777 n.3 (9th Cir. 2002). Generally, it is not knowledge of some facts pertinent to a claim that constitutes discovery of a factual predicate within the meaning of § 2244(d)(1)(D); rather, it is knowledge of facts

---

[3] Petitioner conflated his arguments under 28 U.S.C. § 2244(d)(1)(D) with some of his arguments claiming equitable tolling. Respondent addressed petitioner's arguments in the context of equitable tolling. In any event, analyzed under either section, the outcome is the same.

12

1   constituting reasonable grounds for asserting all elements of a claim in good faith. Hasan v.
2   Galaza, 254 F.3d 1150, 1154-55 (9th Cir. 2001). The time begins to run when the petitioner
3   knows, or through diligence could discover, the important facts, and not when the petitioner
4   recognizes their legal significance. It is not necessary for a petitioner to understand the legal
5   significance of the facts themselves before the obligation to exercise due diligence commences
6   and the statutory period starts running. Id. at 1154 n.3.

7   First, respondent points out that petitioner failed to identify an exhibit that demonstrates
8   he submitted a CDC form on December 12, 2006 (ECF No. 28 at 10), and argues that because
9   petitioner's argument is unsupported, it should be disregarded. (ECF No. 30 at 6.) Although
10  petitioner failed to refer to an exhibit, he appears to refer to the CDC documents entitled
11  "Transfer Questionnaire" and "Transfer Treaty Program -- Application and Certification,"
12  bearing petitioner's signature of December 12, 2006. (CT 309-11.) Such exhibits also bear the
13  December 12, 2006 signature of CCI LeBard, petitioner's case manager. (CT 309-11.) Petitioner
14  argues that the signature of Mr. LeBard implies that Mr. LeBard was responsible for routing these
15  documents. There is a handwritten notation on the transfer questionnaire that states, "Copy given
16  to [inmate] 12/12-06," which raises an inference that Mr. LeBard retained the original forms.
17  (ECF No. 18-4 at 12.) However, petitioner subsequently filed his transfer request with the CSC
18  on October 16, 2009. (ECF No. 1 at 28.) Petitioner fails to explain why he did not submit the
19  2006 forms to the CSC in 2006. In any event, the exhibits do not indicate that the signed forms
20  were sent to the Canadian Consulate, or the CSC, and their titles differ from the April 28, 2009
21  notification forms that ultimately resulted in petitioner obtaining a written response.

22  Second, petitioner's contention that he was impeded by his inability to gather his complete
23  criminal trial record is unavailing. Petitioner states that he "took an abundant amount of time and
24  his limited resources to attempt collection of a full and complete record of the criminal
25  proceedings against him." (ECF No. 28 at 16.) Petitioner claims there are over 900 pages
26  missing, but he does not specifically identify what missing documents were vitally important to
27  his transfer claim. Petitioner concedes that on January 9, 2006, prior to entry of the plea, he was
28  ////

provided three documents explaining the prisoner transfer treaty by defense counsel.[4] (ECF No. 1 at 21.) Although petitioner may have wanted his case file earlier, 28 U.S.C. § 2244(d)(1)(D) does not provide for an extended delay while petitioner gathers every possible scrap of evidence that might support his claim. See Rivas v. Fischer, 687 F.3d 514, 530-52 (2d Cir. 2012) (prisoner's evidence, consisting of misconduct by the medical examiner and various acts of ineffectiveness by trial counsel, was not "newly discovered"; the actions of the medical examiner were publicized prior to trial, and the allegations of ineffectiveness concerned errors that were made prior to and during trial); Earl v. Fabian, 556 F.3d 717, 723-25, 727-28 (8th Cir. 2009) (court rejected argument that the statute of limitations did not commence running under § 2244(d)(1)(D) until he received his case file because the factual predicate of a claim constitutes the "vital facts underlying those claims," and the "vital facts" underlying his claim that the introduction of his confession at trial violated his constitutional rights were known long before he received his case file.).

---

[4] Petitioner claims these exhibits "are a picture into what [petitioner] believed were the existing Treaty from the BPH's view . . . and the Consulate of Canada. . . ." (ECF No. 28 at 12, citing CT 300, 332-333 & 335.) "Based on this view of the Treaty led [petitioner] into changing his plea and following directions of his prison case managers in submission of the forms noted." (ECF No. 28 at 12-13.) A fair reading of these exhibits demonstrate that such transfers are conditional and require the agreement by Canadian authorities. (CT 300, 335; ECT No. 1 at 51-64 (complete copy of Canada's International Transfer of Offenders Act.) The Offenders Act specifically states that the consent of the three parties to a transfer is *required*: the offender (petitioner), the foreign entity and Canada. (ECF No. 1 at 53.) The Board states that the authority to approve transfers of foreign citizen inmates to their native countries to serve the remaining prison terms is delegated to the Chair of the Board of Parole Hearings by the Governor." (CT 335.) The Board of Prison Terms Foreign Prisoner Transfer Treaty Program states that "*in order for a transfer to occur*, the prisoner, the State of California, the United States Government and the foreign nation must agree to the transfer." (CT 300, emphasis added.) The Board sets forth a list of some of the factors the Board reviews "when deciding *whether* a prisoner should be considered for transfer." (CT 300, emphasis added.) The Board warns that "some treaties have restrictions on indeterminate sentences and how long a prisoner has lived in the United States prior to committing the offense that sent him or her to prison." (CT 300.) Specifically, the Board warns, "[t]he decision to approve a transfer request is *discretionary* as *there are cases in which a transfer is not appropriate*." (CT 300, emphasis added.) *If* the Chairperson of the Board approves the request for transfer, it would be forwarded to the United States Justice Department International Prisoner Transfer Unit ("IPTU"). *If* the IPTU approves the transfer, it would be sent to the foreign nation for review. *If* the foreign nation approves the transfer, the prisoner would be scheduled for an Immigration and Custom Enforcement Removal Order and a Consent Verification Hearing. (CT 300.)

Moreover, the critical factual predicate at issue here is when petitioner knew or could diligently have discovered that he was not eligible for transfer to Canada. Such information would not have been located in his trial record or the defense attorney's file. Finally, as noted by respondent, in her November 7, 2013 letter, defense counsel stated that "[o]n two separate occasions, [she] copied [petitioner's] entire file (which was voluminous) and had it delivered to him at the Department of Corrections." (ECF No. 1 at 137.)

Third, even if petitioner's failed efforts to obtain the proper transfer form or his other arguments[5] could be construed as an impediment to discovering he was ineligible to transfer to Canada, no such impediment existed once petitioner was informed, by the January 20, 2010 letter, that he was ineligible for transfer because his sentence was indeterminate. (CT 325.) Petitioner received this letter on March 5, 2010. (CT 326.) Under 28 U.S.C. § 2244(d)(1)(D), using March 5, 2010 as the new trigger date would not render the instant petition timely for the same reason the later date of January 7, 2011, would not.[6] (See Section V.A., *supra*.) Petitioner's arguments based on steps he took in 2012 (ECF No. 28 at 18-19) also fail because the latest date the limitations period could have expired was January 7, 2012. (See Section V.A., *supra*.)

For all of these reasons, the undersigned cannot find that 28 U.S.C. § 2244(d)(1)(D) provides petitioner with a statute of limitations commencement date later than the January 7, 2011 commencement date analyzed in section V.A. above.

VI. Equitable Tolling

Petitioner argues that any alleged untimeliness was caused by external impediments and not by any lack of diligence on his part. (ECF No. 28 at 7.) He recounts his efforts to obtain the proper transfer form, and argues that he cannot be faulted for not submitting a document for three

////

---

[5] Whether or not petitioner's prison records accurately reflected petitioner's Canadian citizenship is of no consequence because the issue is when petitioner became aware, or could have discovered, that he was ineligible to transfer to Canada.

[6] In the October 29, 2010 letter from the BPH, petitioner was informed that his request for transfer to Canada was denied. (CT 321.) On December 30, 2010, the CSC informed petitioner that his application to transfer to Canada was terminated in light of the BPH's denial. (CT 323.)

1  years where the exhibits show he "diligently submitted two applications (4/11/2006 and
2  12/12/2006) within the first ten months following" his conviction.  (ECF No. 18 at 11.)
3         Respondent contends that petitioner failed to demonstrate extraordinary circumstances
4  because his October 2012 filing in state court was untimely and not properly filed, as required
5  under AEDPA.  (ECF No. 30 at 5-6.)  Respondent argues that petitioner's delay in submitting his
6  request for transfer to the CSC demonstrates that petitioner slept on his rights for three years,
7  rendering him ineligible to benefit from equitable tolling.  (ECF No. 30 at 6.)
8         Equitable tolling is available to toll the one-year statute of limitations available to 28
9  U.S.C. § 2254 habeas corpus cases.  Holland v. Florida, 130 S. Ct. 2549, 2560 (2010).  A litigant
10 seeking equitable tolling must establish:  (1) that he has been pursuing his rights diligently; and
11 (2) that some extraordinary circumstance stood in his way.  Pace, 544 U.S. at 418.  The Ninth
12 Circuit has explained:

> To apply the doctrine in "extraordinary circumstances" necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances "stood in his way" suggests that an external force must cause the untimeliness, rather than, as we have said, merely "oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.

17 Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir.) (internal citation omitted), cert.
18 denied, 130 S. Ct. 244 (2009); see also Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir.
19 2003) (petitioner must show that the external force caused the untimeliness).  It is petitioner's
20 burden to demonstrate that he is entitled to equitable tolling.  Espinoza-Matthews v. California,
21 432 F.3d 1021, 1026 (9th Cir. 2005).
22        Courts are expected to "take seriously Congress's desire to accelerate the federal habeas
23 process."  Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1289 (9th Cir. 1997),
24 overruled in part on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530
25 (9th Cir. 1998).  See also Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (describing the
26 Ninth Circuit's standard as setting a "high hurdle" to the application of equitable tolling).  To this
27 end, "the circumstances of a case must be 'extraordinary' before equitable tolling can be
28 applied[.]"  Holland, 560 U.S. at 652.  Whether a party is entitled to equitable tolling "turns on

the facts and circumstances of a particular case." Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir. 2003) (quoting Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999)). See also Holland, 560 U.S. at 654 (leaving "to the Court of Appeals to determine whether the facts in this record entitle Holland to equitable tolling, or whether further proceedings, including an evidentiary hearing, might indicate that respondent should prevail"); Doe v. Busby, 661 F.3d 1001, 1012 (9th Cir. 2011) ("[W]hether a prisoner is entitled to equitable tolling under AEDPA will depend on a fact specific inquiry by the habeas court which may be guided by 'decisions made in other similar cases.'") (citing Holland, 560 U.S. at 650).

Here, petitioner fails to explain why he waited until October 2006 in which to contact the Canadian Consulate. The treaty transfer program documents provided to petitioner before he pled no contest on January 13, 2006, make clear that Canadian authorities must agree to the transfer. A reasonable person anxious to transfer to Canada as soon as possible, particularly given the advanced age of petitioner's father, would have contacted the Canadian authorities as soon as possible.

In addition, the documents signed in April and December 2006 are insufficient to demonstrate petitioner's diligence. The CDC Foreign Transfer form was signed by staff on April 11, 2006. (CT 302.) The CDC documents entitled "Transfer Questionnaire" and "Transfer Treaty Program -- Application and Certification," were signed by petitioner and witnessed by Mr. LeBard on December 12, 2006. (CT 309-11.) However, none of these documents demonstrate that a proper request for transfer was sent to the Canadian Consulate in 2006. Indeed, the April 11, 2006 form only bears a staff signature, and the bottom portion of the notification form is not completed. (CT 302.) By October 17, 2006, petitioner concedes he needed a current form, referenced in his letter to the BPH (CT 305), but petitioner does not provide the date the law librarian informed him the CDC 830 form was outdated. On or about November 4, 2006,[7] petitioner received the transfer questionnaire and application and certification forms (ECF No. 28 at 10), which he signed on December 12, 2006, but nothing in the record reflects the forms were

---

[7] Petitioner claims he submitted these forms on December 12, 2006, "38 days after it was mailed to him." (ECF No. 18 at 10.) Thus, it appears petitioner received these forms on or about Saturday, November 4, 2006.

17

sent to the Canadian Consulate or the CSC. (CT 309-11.) Petitioner does not declare that he sent the forms to the Canadian Consulate or the CSC in 2006 or 2007. (ECF No. 1 at 19-31.)

Moreover, despite his initial efforts in 2006, petitioner does not explain his failure to again contact the Canadian authorities until October 16, 2009, when he filed the transfer application with the CSC (ECF No. 1 at 28). Although he completed the CDC form entitled "Foreign Consulate Notification and Foreign Prisoner Transfer Treaty Program Notification" on April 28, 2009 (CT 311), he fails to explain why he waited almost six months before filing with the CSC. Ms. Sarria informed petitioner on November 1, 2006, that the CSC is the Canadian entity involved with all transfer requests, and offered her assistance to petitioner. (CT 347.) In Ms. Sarria's January 9, 2007 letter, she specifically informed petitioner that if he had questions regarding whether he was eligible to apply for a transfer, he should contact the CSC. (ECF No. 18-4 at 175; CT 21.) Yet petitioner did not contact the CSC until October 16, 2009. Indeed, once he contacted the CSC, he received a response from the CSC four and a half months later. Thus, had petitioner written to the CSC shortly after he was convicted, or shortly after receiving Ms. Sarria's November 1, 2006 letter, he could have discovered that his indeterminate sentence precluded his transfer to Canada.

Furthermore, the documents provided by petitioner fail to demonstrate reasonable diligence on his part, particularly during the one year period following his conviction. Rather, the documents provided by petitioner reflect large gaps in time during which petitioner took no steps to either follow-up on previously-submitted documents, by filing a request for interview with prison staff concerning his transfer request, filing an inmate appeal,[8] or simply writing to the CSC for assistance.

In any event, even assuming, *arguendo*, that petitioner did not learn that he was ineligible for transfer until January 7, 2011, petitioner fails to demonstrate his diligence during the subsequent one year period. Despite learning of his ineligibility, and despite his current position

---

[8] Petitioner filed an inmate appeal on June 15, 2009, concerning his April 28, 2009 request for transfer. (CT 315.) But petitioner provided no similar appeal filed in connection with his April or December 2006 forms.

18

that "the point of entering the [no contest] plea was to transfer to Canada as soon as possible" (ECF No. 1 at 19), petitioner did not immediately file a petition for writ of habeas corpus. Rather, he waited until April 11, 2011, and then wrote a letter to the public defender, and later wrote to the California State Bar. (ECF No. 1 at 29.) Despite the State Bar's August 2011 response in which petitioner was informed they could not help him, he again wrote the State Bar in an attempt to clarify his request. (Id.) It was not until October of 2012 that petitioner filed his motion to vacate his sentence in state court. By then, the limitations period based on the January 7, 2011 commencement date had already expired on January 7, 2012. Such filing, even if it were properly filed, could not revive the limitations period.[9]

Petitioner makes much of his efforts in 2012, including writing to several attorneys, law schools, and other agencies, and "attempted to learn the law and determine which type of document to file and with which court" which he claims took several months. (ECF No. 28 at 18.) However, by then, the statute of limitations period had expired.

Finally, to the extent petitioner claims he is entitled to equitable tolling because he had no personal experience with the criminal justice system, no knowledge of the legal system because he's a Canadian citizen, or did not know how to perform legal research (ECF No. 1 at 24), or relied on jailhouse lawyers (ECF No. 28 at 12), such arguments are unavailing. Lack of legal knowledge does not excuse the lengthy delay in this case. See Ford v. Pliler, 590 F.3d 782, 789 (9th Cir. 2009) (observing that the equitable tolling "standard has never been satisfied by a petitioner's confusion or ignorance of the law alone[ ]"). A prisoner who relies on other inmates to assist him retains the "'personal responsibility of complying with the law.'" Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010) (citation omitted) (holding that reliance on another inmate to prepare and file a habeas petition did not warrant equitable tolling); Diaz v. Knowles, 2009 WL 728567 (E.D. Cal. Mar. 19, 2009) (no equitable tolling for poor advice given by

---

[9] Moreover, even though the state court informed petitioner of the rules governing a petition for writ of habeas corpus on December 4, 2012, petitioner did not file a petition for writ of habeas corpus until January 2, 2014. The state appellate court appointed counsel for petitioner on March 13, 2013 in Case No. A137383, and it was that same counsel who filed the habeas petition on January 2, 2014. However, any efforts after the limitations period expired on January 7, 2012, cannot provide equitable tolling.

jailhouse lawyer).

Accordingly, after review of the record, the undersigned finds that petitioner has not met his burden of demonstrating the existence of grounds for equitable tolling. See Pace, 544 U.S. at 418 (petitioner bears burden of demonstrating grounds for equitable tolling); Espinoza-Matthews, 432 F.3d at 1026.

VII. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (ECF No. 18) be granted; and

2. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 23, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/mazz1720.mtd.hc.sol